# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REACT PRESENTS, INC., an Illinois Corporation, CLUBTIX, INC., an Illinois Corporation, LUCAS KING, and JEFFREY CALLAHAN, ) ) ) ) ) Plaintiffs, ) ) v. ) ) ROBERT F. X. SILLERMAN, ) ) Defendant. ) | No. 16 C 3790 Judge Charles P. Kocoras |

## MEMORANDUM OPINION AND ORDER

CHARLES P. KOCORAS, U.S. District Judge:

Plaintiffs React Presents, Inc., Clubtix, Inc., Lucas King, and Jeffrey Callahan (collectively, "React") filed their one-count Complaint in this diversity action on March 29, 2016, alleging breach of a Guaranty executed by Defendant Robert Sillerman. *See* Dkt. 1. Sillerman filed his Answer, Affirmative Defense, and Counterclaim on May 27, 2016, alleging "that the React Parties fraudulently manipulated the financial information upon which the Gross Earn-Out Payment," which ultimately triggered Sillerman's Guaranty, "was calculated." *See* Dkt. 13-1, at 8-12. Now before the Court is React's Motion to Strike Affirmative Defense and Dismiss Counterclaim, contending that Sillerman's Guaranty and a "Reaffirmation" thereof "foreclosed Sillerman's ability to raise any fraud-based defense." *See* Dkt. 22, at 2. For the reasons below, React's Motion to Strike and Dismiss is denied, and React is granted 21 days to answer Sillerman's now-amended Counterclaim.

# BACKGROUND

As required for a motion under Fed. R. Civ. P. 12(b)(6), the Court assumes the following allegations in Sillerman's Counterclaim to be true. The Counterclaim explains that Sillerman's Guaranty evolved out of an acquisition of the operations of Plaintiff React Presents, Inc. (the "React Business") by two non-party entities, SFX Entertainment, Inc. and SFX-React Operating LLC (collectively referred to herein as "SFX"). *See* Dkt. 13-1, at ¶¶ 19, 38. This transaction was effected by an Asset Purchase Agreement dated February 18, 2004, by and among SFX, the React Business, and the remaining Plaintiffs in this action—Clubtix, Inc., Lucas King, and Jeffrey Callahan. *Id.* at ¶ 19.

According to Sillerman's Counterclaim, the React/SFX Asset Purchase Agreement provided for SFX to acquire the React Business for $12,216,903 in cash and stock, "plus a 'Gross Earn-Out Payment' of 6.25 times the difference between the Proportionate Adjusted EBITDA for 2014 and the Proportionate Adjusted EBITDA for 2012, as defined and set forth in Section 2.8 of the React Purchase Agreement." *Id.* Pursuant to this Agreement, in April 2015, an "Earn-Out Statement" was provided to React which showed a "proposed Gross Earn-Out Payment" in excess of $14 million. *Id.* at ¶ 22. Then on July 7, 2015, React and SFX "agreed to a Gross Earn-Out Payment amount of $14,732,665.13, of which $11,829,353.13 was payable in cash with the balance in SFX stock," and a "payment schedule was also specified for the cash portion of the outstanding amount," since "SFX had already paid $1 million of that amount, leaving $10,829,353.13 purportedly outstanding." *Id.*

Also on July 7, 2015, SFX executed a "Subordinated Note" in the principal amount of this alleged balance ($10,829,353.13), and Sillerman simultaneously executed and delivered to React a personal Guaranty "of all amounts due under the Note, including interest and enforcement costs, up to a maximum of $7,000,000." *See* Dkt. 13-1, at 3, ¶¶ 8-9. This Note required SFX to pay React $1 million by July 21, 2015; $2 million by September 1, 2015; $2 million by November 2, 2015; and $3 million by January 4, 2016. *Id*. at 4, ¶ 11. But on November 4, 2015, due to certain "cash flow problems at SFX," SFX, Sillerman, and React "entered into an Amendment and Reaffirmation of Guaranty and Promissory Note ('Reaffirmation Agreement'), which extended the due date of the third installment of the Note from November 2, 2105 to December 1, 2015, and increased Sillerman's liability under the Guaranty from $7,000.000.00 to $7,829,353.13." *Id*. at ¶ 12, and 8, ¶ 24.

React alleges in its Complaint in this action (and Sillerman does not dispute) that SFX "failed to make the $3,000,000 Note payment due on January 4, 2016," *id*. at 4, ¶ 13, and that on January 13, 2016, the React parties therefore sought and obtained a judgment against SFX in the Circuit Court of Cook County, Illinois "for all amounts due under the Note, but have not received payment on said judgment." *Id*. at 4-5, ¶ 14. And React further alleges (and Sillerman again does not dispute) that, given this default, "the React Parties have demanded that Sillerman immediately pay all amounts due under the Note in accordance with Sillerman's obligations under the Guaranty and the Reaffirmation Agreement," *id*. at ¶ 15; but "Sillerman has failed and refused to pay the amounts due pursuant to the Guaranty." *Id*. at ¶ 16.

3

React's Complaint in this action seeks payment from Sillerman under this Guaranty. *See* Dkt. 1. Sillerman's Affirmative Defense and Counterclaim, in turn, allege fraud in connection with the Earn-Out Statement and resulting determination of the Gross Earn-Out Payment on which SFX defaulted, and which ultimately triggered Sillerman's liability under the Guaranty. Specifically, Sillerman alleges that the Earn-Out Statement from which the Gross Earn-Out Payment figure was initially derived was "calculated in reliance on the financial information provided to SFX by the React Parties (since King and Callahan supervised the preparation of those financial records and controlled the financial activities of the React businesses)." Counterclaim, Dkt. 13-1, at 7, ¶ 22. According to Sillerman, "[a]t the time the Gross Earn-Out Payment amount was agreed by SFX, it had done only a high level review of the Earn-Out claim and had not undertaken a forensic audit because it had no reason to believe that the financial data provided by the React Parties from records controlled by King and Callahan was materially misleading or inaccurate, much less fraudulent." *Id*. at 8, ¶ 23. But, Sillerman alleges, "[h]ad it known that, as now appears, those financial results had been manipulated by King and Callahan, SFX would never have agreed to the Earn-Out payment amount nor entered into the Note. Nor would Mr. Sillerman have agreed to the Guaranty." *Id*.

"Now that additional financial data for the React businesses is available for 2015," Sillerman contends "it is apparent that the React Parties fraudulently manipulated the financial information upon which the Gross Earn-Out Payment was calculated." *Id*. at ¶ 26. According to Sillerman, "millions of dollars of expenses that

4

should have been recorded in 2014 were instead deferred into 2015, thereby artificially inflating the profitability of the React business – and the Earn-Out – for 2014." *Id*. at 8-9, ¶ 26. For instance, according to the Counterclaim, "React's Earn-Out claim is premised on supposedly beating industry profitability by between 35% and nearly 200%," *id*. at 10, ¶ 29; but it "now appears that the React business reported such [an] extraordinary result by pushing millions of dollars of expenses from 2014 into 2015, thus driving up the 2014 earnings to achieve a large Earn-Out payment and correspondingly causing 2015 results to come crashing down, loaded with enormous expenses that were an overhang from the prior year." *Id*. at ¶ 30. "But for these fraudulent manipulations," Sillerman says, the Gross Earn-Out Payment would have been zero or close to zero, rather than the almost $15 million (including $11 million cash) that the React Parties claim." *Id*. at 9, ¶ 26. Thus, according to Sillerman, he "was fraudulently induced to enter into the Guaranty and Reaffirmation Agreement on the basis of the false financial information provided to SFX, and the Guaranty and Reaffirmation Agreement are accordingly invalid and unenforceable." *Id*. at ¶ 27.

React now moves to strike Sillerman's fraud-based Affirmative Defense and dismiss his Counterclaim on three grounds: (1) that both are precluded by a purported "binding judicial admission" made by Sillerman's counsel during a status hearing before this Court; (2) that both are "foreclosed" by Sillerman's Reaffirmation Agreement; and (3) that both are inadequately pled, specifically the requisite element of reliance, and for failure to allege fraud with particularity as required by Fed. R. Civ. P. 9(b). *See* Dkt. 22. The Court addresses each argument, in turn.

# DISCUSSION

## I. Asserted Judicial Admission

React's first challenge of Sillerman's fraud-based Affirmative Defense and Counterclaim seizes upon a sentence uttered by his counsel during a status hearing before this Court. React argues that "Sillerman is bound by the judicial admission made by his counsel at the June 7 hearing where he stated that there is 'not a question of fraud in the inducement of the underlying contract.'" Dkt. 22, at 2 n.1, 7 (citing Dkt. 22-1, at 16). Citing *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d (7th Cir. 1997), React argues that this "constitutes a binding judicial admission by Sillerman," *id.* at n.1; and "[o]n this basis alone, Sillerman's Affirmative Defense and Counterclaim should be stricken and dismissed, with prejudice." *Id.* at 7. The Court disagrees.

Contrary to React's assertions, *Soo Line R.R.* merely followed the "well-settled rule that a party is bound by what it states in its pleadings," to hold that the plaintiff's complaint contained binding admissions entitling the defendant to summary judgment. 125 F.3d at 483. As the court explained: "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them," particularly on summary judgment, which "is proper 'if the *pleadings*, depositions, answers to interrogatories, and admissions on file together with the affidavits' show that one party is entitled to a judgment as a matter of law." *Id.* (emphasis in original, quoting Fed. R. Civ. P. 56(c) and *Keller v. U.S.*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)). But the purported admission here was not made in a pleading or stipulation; nor is this a motion for summary judgment.

6

Rather, React points to an impromptu remark by Sillerman's counsel during a status conference explaining the basis for Sillerman's fraud counterclaim. This was hardly the sort of "formal and considered" statement that *Soo Line R.R.* contemplated. *See id*. at 483. Nor did it even suggest what React contends. At most, Sillerman's counsel explained that Sillerman is not claiming "fraud in the inducement of the underlying contract." Dkt. 22-1, at 16. As this Court acknowledged immediately afterward, this said nothing of fraud "in the takeover and operation" of the business that triggered Sillerman's Guaranty: "I do not think he is alleging fraud was in the minds of one side at the outset of the relationship. . . . But as I heard him, it was in the development and the operation of the business and how things got recorded and whether they were rightfully recorded." *Id*. Seventh Circuit authority plainly precludes twisting such an impromptu statement into a binding judicial admission relinquishing the very fraud claim that Sillerman's counsel was trying to explain.

> A judicial admission is a statement, normally in a pleading, that negates a factual claim that the party making the statement might have made or considered making. Were the plaintiff's conception of judicial admissions accepted, statements made by lawyers in opening and closing arguments, in making objections, at side bars, and in questioning witnesses would be treated as pleadings and searched for remarks that might be construed as admissions though neither intended nor understood as such. Trials would be turned into minefields. That is why "in order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous."… That standard has not been satisfied in this case.

*Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (citations omitted, rejecting assertion of judicial admission during closing argument).

## II. Asserted Waiver of Defenses

React next argues that Sillerman's fraud-based Affirmative Defense and Counterclaim are similarly "foreclosed" by Sillerman's "Reaffirmation" of his Guaranty. Dkt. 22, at 2. According to React, "Sillerman waived any such defenses" when he agreed to the following language in the Reaffirmation Agreement:

> The undersigned Guarantor hereby acknowledges, confirms and ratifies (i) the Guaranty, (ii) that all of Guarantor's obligations, covenants and agreements under the Guaranty, and all of the rights and remedies of Holders thereunder and with respect thereto, remain in full force and effect, and (iii) that the Guaranty, as modified by this letter agreement, is hereby reaffirmed and admitted to be in existence. Except as specifically and expressly modified by this letter agreement, ***the Guaranty (including any and all provisions thereof) shall not be, and is not, impaired, limited, reduced, compromised or modified by any acts or dealings of the parties prior to the date hereof, by any payments made pursuant to and in accordance with the Promissory Note prior to the date hereof, or otherwise***.

Dkt. 1-3, at 1-2. React points to this highlighted language in the parties' Reaffirmation Agreement to argue that Sillerman "waived" all "fraud-based defenses" when he agreed that his Guaranty "shall not be, and is not, impaired, limited, reduced, compromised or modified by any acts or dealings of the parties prior to the date hereof." Dkt. 31, at 2. There are three problems with this argument.

First is the language on which React relies. While it is true that this clause denounces any impairment of Sillerman's Guaranty due to "any acts or dealings of the parties prior to the date hereof," React ignores the immediately preceding language, which "confirms and ratifies" the Guaranty and "all of" Sillerman's "covenants and agreements under the Guaranty." As even React is forced to admit, one such

8

agreement and covenant under Sillerman's original Guaranty was his explicit reservation of "fraud-based defenses." *See* Dkt. 22, at 7: "In the Guaranty, Sillerman expressly waived 'every present and future defense (other than the defense of payment in full and ***fraud-based defenses***)" (emphasis added). Thus, contrary to React's insistence that the Reaffirmation Agreement "did *not* preserve any 'fraud-based defenses,'" *id.*, it "confirms and ratifies" that very reservation. Nor does the later language to which React points detract from that reservation. On the contrary, that clause makes clear that, "[e]xcept as specifically and expressly modified by this letter agreement," all "provisions" of the original Guaranty remain intact and are not "impaired, limited, reduced, compromised or modified by any acts or dealings of the parties prior to the date" thereof. If anything, this language similarly reaffirms Sillerman's reservation of fraud-based defenses in his original Guaranty, as it does all other "provisions" of the original Guaranty, except the "Guaranty Limitation Amount" (which was "increased to $7,829,353.13") and the "Third Installment payment due date" (which was "extended to December 1, 2015"). Dkt. 1-3, at 1.

The second problem with React's waiver argument is the consistent requirement in Illinois case law[1] that any waiver of defenses be "clear and unambiguous,"[2] which the lone clause that React cites most certainly is not. This

---

[1] React asserts (and Sillerman does not dispute) that the Guaranty "is governed by Illinois law," Dkt. 22, at 8 and n.4, and the parties both refer to Illinois law. *Id.*; Dkt. 25, at 21; *see also Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) (applying law selected in contractual choice-of-law provision).

[2] *See Household Commercial Fin. Servs. Inc. v. Suddarth*, No. 01 C 4355, 2002

9

conclusion is inescapable on its own, but all the more so when the phrase is compared to several express "waivers" in the parties' instruments, which demonstrate their ability to state an unambiguous waiver when they mean to.[3] And this problem is only compounded by the further requirement in Illinois decisions that any ambiguity be construed in Sillerman's favor.[4] This Court is therefore constrained from concluding on a motion to dismiss (where reasonable inferences must be drawn in Sillerman's favor anyway) that an at-best equivocal phrase ("shall not be, and is not, impaired, limited, reduced, compromised or modified by any acts or dealings of the parties prior to the date hereof") dispossessed Sillerman of all fraud-based defenses.

---

WL 31017608, at *7 (N.D. Ill. Sept. 9, 2002) ("Illinois courts generally enforce clear and unambiguous waivers of defenses contained in guaranties."); *Heller Fin., Inc. v. Gerst*, No. 98 C 6415, 2000 WL 875934, at *3 (N.D. Ill. June 29, 2000) (same); *Douglas v. Tonigan*, 830 F. Supp. 457, 462 (N.D. Ill. 1993) (same).

[3] *See, e.g.* Dkt. 1-1, ¶ 6.3 ("Each Co-Maker hereby irrevocably authorizes and empowers any attorney-at-law to . . . waive all rights of appeal . . . Each Co-Maker waives the right to any stay of execution . . . Each Co-Maker hereby waives and releases any and all claims or causes of action"); *id.* at ¶ 10.2 ("Waivers"); *id.* at ¶ 10.6 ("Waiver of Jury Trial"); *id.* at ¶ 10.7 ("Waiver of Defenses"); Dkt. 1-2, at ¶ 6 ("The Guarantor hereby waives . . ."); *id.* at ¶ 13 ("THE GUARANTOR WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT IN FULL AND FRAUD-BASED DEFENSES"); *id.* at ¶ 14 ("THE GUANTOR AND THE HOLDER . . . EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TOT A TRIAL BY JURY").

[4] *See S. Wine & Spirits of Ill., Inc. v. Steiner*, 2014 IL APP (1st) 123435, at ¶ 16, 8 N.E.3d 1065, 1069 (2014) ("the court accords the guarantor the benefit of any doubts that may arise from the language of the contract"); *Ringgold Cap. IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 16, 993 N.E.2d 541, 546 (2013) (same); *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 402-03, 946 N.E.2d 957, 965 (1st Dist. 2011) ("A guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract," and his liability "is strictly construed in his favor and against the party in whose favor the guaranty runs.").

And third, even if the Court found this isolated phrase to be a clear and unambiguous waiver (which it does not), and even if the Court could construe that phrase against Sillerman on this motion or at all (which it cannot), Illinois law still resists "allowing a defendant to avoid the normal consequences of his misrepresentations through a boilerplate waiver provision in a guaranty." *Tonigan*, 830 F. Supp. at 462. And further, a "covenant of good faith and fair dealing is implied in every contract, absent express language to the contrary, ***even when a guaranty waives all defenses***." *Fifth Third Bank (Chicago) v. Stocks*, 720 F. Supp. 2d 1008, 1011-12 (N.D. Ill. 2010) (emphasis added). This latter principle applies to Sillerman's allegation that he "reasonably and justifiably relied on the representations, and ostensible good faith of the React Parties before he signed the Guaranty and Reaffirmation Agreement, and would not have signed those documents if he knew the true state of the finances of the React business." Dkt. 13-1, ¶ 36. For these reasons as well, React's Motion to Strike and Dismiss must be denied.

## III. Adequacy of Reliance and Fraud Allegations

Finally, React argues that, regardless of whether Sillerman's fraud allegations are "foreclosed" or "waived," his Affirmative Defense and Counterclaim still fail as a matter of law because: (1) "Sillerman has not pleaded, and cannot plead, facts supporting reasonable or justifiable reliance," and (2) "Sillerman's fraud defense is not otherwise pleaded with the requisite particularity" required by Fed. R. Civ. P. 9(b), particularly (but not only) where it alleges facts "on information and belief." *See* Dkt. 22, at 2-3, 12. The Court disagrees on all points.

As for Sillerman's obligation to allege justifiable reliance, even React concedes that Sillerman alleged "that he 'reasonably and justifiably relied on the representations'" made by React before signing the Guaranty and Reaffirmation Agreement. *See* Dkt. 22, at 5, 8. It is thus undisputed that Sillerman *alleged* reliance; React instead disputes the ***truth*** of that allegation. But "reliance is normally a question of fact" that "can be determined as a matter of law" only "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). This is not such a case.

For instance, React claims that Sillerman "had every motivation and incentive – both when he signed the Guaranty *and* the Reaffirmation Agreement – to ask for, review, audit or otherwise test the Earn-Out Statement and the Gross Earn-Out Payment amount, including any underlying financials of SFX," Dkt. 22, at 10; "Sillerman had substantial time and opportunity to investigate, ask questions, conduct due diligence and/or order or perform his own forensic audit of the financials," *id.*; "any allegation or implication that Sillerman did not have access to the relevant financial records is directly contradicted by the fact that he was CEO and Chairman of the Board of Directors of SFX at all relevant times" (a fact React would establish *via* the Court's judicial notice), *id.* at 10 and n.7; and "Sillerman's repeated failures to verify the Earn-Out Statement and the Gross Earn-Out Payment amount defeats any contention that he reasonably or justifiably relied upon any alleged representations by Plaintiffs." *Id.* at 11. But this is all disputed. *See* Dkt. 25, at 2-3.

And even if the Court could take judicial notice of Sillerman's title within SFX, this would be no substitute for the facts required to determine whether his reliance on the allegedly "false information provided by King and Callahan" (Dkt. 25, at 5) was justified—*i.e.*, "all of the facts that [Sillerman] knew, as well as those facts [Sillerman] could have learned through the exercise of ordinary prudence." *See Cozzi*, 250 F.3d at 574. These disputed factual issues may not be determined against Sillerman on a motion to dismiss. Nor may the Court infer that Sillerman, regardless of his title, was in control of SFX's financial information, when Sillerman instead alleges that King and Callahan "were running the business on SFX's behalf." Dkt. 25, at 5; Dkt. 13-1, ¶ 22 ("King and Callahan supervised the preparation of those financial records and controlled the financial activities of the React businesses").

React's argument that Sillerman has failed to plead fraud with particularity as required by Rule 9(b) is similarly unpersuasive. As React acknowledges, this requirement is satisfied by alleging the "who, what, when, where, and how of the fraud." Dkt. 22, at 11 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)). React itself demonstrates that Sillerman has met this requirement when recounting Sillerman's fraud allegations in the brief React filed in support of the instant motion to dismiss:

> Sillerman contends that *only* after he signed the Guaranty and Reaffirmation Agreement did additional financial data for the React Entities become available such that it allegedly became "apparent that ***the React Parties fraudulently manipulated the financial information upon which the Gross Earn-Out Payment was calculated***." [*Id.* ¶ 26.]

13

> In particular, ***Sillerman asserts that "millions of dollars of expenses that should have been recorded in 2014 were instead deferred into 2015, thereby artificially inflating the profitability of the React business – and the Earn-Out – for 2014.***" [*Id.*] . . . . Sillerman compares SFX's 2015 financial performance to its 2014 and other historical financial information, as well as to the performance of one of SFX's competitors (Live Nation Entertainment), and alleged "industry norms." [*Id.* ¶¶ 29-33.] According to Sillerman, ***these comparisons expose certain "expense irregularities" that "simply do not add up" and "lead only to the conclusion that the 2014 financial results were massively inflated***" [*Id.* ¶ 28.]
>
> Sillerman asserts that none of the alleged irregularities were known to SFX or Sillerman when they executed the Note and Guaranty. [*Id.* ¶ 34.] Rather, Sillerman only learned of them after Plaintiffs sought to collect on the Guaranty, which prompted him to ask for documents to verify the claim amounts. [*Id.*] ***Had SFX and Sillerman known that, "as now appears," the financial results from which the Gross Earn-Out Payment amount was calculated had been manipulated by King and Callahan, SFX would never have agreed to the Gross Earn-Out Payment amount or entered into the Note, and Sillerman would not have agreed to the Guaranty***. [*Id.* (emphasis added).] Sillerman asserts that he "reasonably and justifiably relied on the representations, and ostensible good faith of the React Parties before he signed the Guaranty and Reaffirmation Agreement, and would not have signed those documents if he knew the true state of the finances of the React business." [*Id.* ¶ 36.]

Dkt. 22, at 4-5 (emphasis added). React can hardly claim that Sillerman's allegations are insufficiently informative, when their own brief reflects a clear understanding of the fraud Sillerman alleges, who perpetrated it, and the consequences. *See Tonigan*, 830 F. Supp. at 461 ("The allegations are sufficient if the defendant is in a position to understand the nature of the conduct from which the plaintiff has drawn the inference of fraud and can defend against the allegations." (quoting *Schaps v. R.A. Transp. Servs., Inc.*, No. 86 C 4582, 1987 WL 12178, at *3 (N.D. Ill. June 5, 1987)).

Contrary to React's assertion, moreover, this conclusion is undiminished by Sillerman's allegation "on information and belief" that "King and Callahan remained employed by React and Clubtix and continued running those businesses, now on behalf of SFX, after the acquisition of the businesses by SFX." *See* Dkt. 22, at 12 n.8; Dkt. 13-1, ¶ 20. The Seventh Circuit has repeatedly made clear that such allegations are acceptable to support a fraud claim where (as here) "the facts constituting the fraud are not accessible to the plaintiff," and "the plaintiff provides the grounds for his suspicions." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (quoting *Pirelli*, 631 F.3d at 443). Sillerman met both of these requirements by explaining that he alleged King and Callahan's role "'on information and belief' because it was not clear from available information exactly how King and Callahan divide their time, as evidenced by their own LinkedIn profiles, which identify their activities as including the React Businesses and other businesses." Dkt. 25, at 12 n.3.

But as important, Sillerman has since filed an Amended Answer and Counterclaim which strikes this "on information and belief" modifier, and similarly deletes the "now appears" phrasing to which React also objected. *See* Dkt. 22, at 12; Dkt. 31-1. Although React complains that this amendment was filed three days after the 21-day deadline for filing as of right under Fed. R. Civ. P. 15 (*see* Dkt. 31, at 2 n.2), in order to streamline further motion practice, the Court hereby grants Sillerman leave to file his Amended Answer (Dkts. 29-30) *instanter*. And given the instant denial of React's Motion to Strike and Dismiss, React is directed to answer Sillerman's amended Affirmative Defense and Counterclaim, rather than the original.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike Affirmative Defense and Dismiss Counterclaim [21] is denied; Plaintiffs are allowed until September 15, 2016, to file their answer to the Affirmative Defense and Counterclaim set out in Sillerman's Amended Answer [30]; and this matter is set for status on September 20, 2016, at 9:30 a.m.

Dated: August 25, 2016

Charles P. Kocoras
United States District Judge